IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:21-CV-00107-M

| | |
|---|---|
| WEST SHORE HOME, LLC, <br> Plaintiff, <br><br> v. <br><br> NEIL WENZ, JACQUELINE WENZ, and <br> EAST COAST SHOWER AND BATH, <br> LLC, <br> Defendants. | **PRELIMINARY INJUCTION** |

This matter is before the court on the Plaintiff West Shore Home, LLC's ("Plaintiff" or "West Shore") Motion for Temporary Restraining Order and Preliminary Injunction [DE-2] ("Motion") against Defendants Neil Wenz, Jacqueline Wenz, and East Coast Shower and Bath, LLC ("Defendants"). The court denied the Motion in part as to the request for a temporary restraining order and set the request for preliminary injunction for hearing [DE-6]. Upon consideration of Plaintiff's Verified Complaint [DE-1], Plaintiff's Motion and supporting documents, oral argument of both counsel for the Plaintiff and counsel for the Defendants at the hearing on the Motion [DE-20], and for good cause shown, the Motion is GRANTED IN PART as to the request for preliminary injunction.

In order to obtain a preliminary injunction, the movant must show "(1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Blackwell v. Wynn*, No. 5:18-CT-3147-BO, 2019 WL 5108136, at *2 (E.D.N.C. Oct. 11, 2019) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). The Plaintiff has met its burden. Pursuant to Federal Rule of Civil Procedure 65(d)(1), the court sets

1

forth below (1) the reasons for issuing this Preliminary Injunction, (2) its specific terms, and (3) the acts being restrained.

I.   **The Reasons for Issuing this Preliminary Injunction**

Plaintiff has made the following allegations by Verified Complaint [DE-1]:

1. Defendant Neil Wenz ("Wenz") was formerly employed by West Shore as an Installation Manager.

2. During his employment with West Shore, Wenz was granted access to West Shore's Customer Relationship Management ("CRM") platform, Salesforce.org ("Salesforce"). West Shore's confidential, proprietary information and/or trade secret information, which included, but was not limited to, West Shore's contact information for existing and potential customers, the specifications for proposals given to existing and potential customers, and the amounts bid to perform services for those customers as well as its costs, was captured within Salesforce (hereinafter collectively referred to as the "Confidential Information and Trade Secrets").

3. On September 4, 2020, West Shore terminated Wenz's employment for workplace violations.

4. Wenz immediately began working for a company he owns with his wife, Jacqueline Wenz ("Mrs. Wenz") (with Wenz, the "Wenzs"), East Coast Shower and Bath, LLC ("ECSB"). ECSB, like West Shore, provides bathroom remodeling for customers throughout North Carolina.

5. Almost immediately after his termination from West Shore on September 4, 2020, Wenz and/or Mrs. Wenz accessed West Shore's Salesforce data without West Shore's knowledge or authorization.

6. Beginning in March 2021, West Shore became aware through its potential customers that Wenz was gaining access to and using West Shore's Confidential Information and Trade Secrets, including, but not limited to, information housed within Salesforce.

7. Several customers reached out to West Shore, to inform it that following an appointment with a West Shore employee (a Design Consultant), ECSB contacted them to inquire about the project. ECSB had information about the customers' proposed project with West Shore that it would not have had, but for having information from West Shore's CRM platform, Salesforce, including but not limited to, contact information for existing and potential customers, the specifications for proposals given to existing and potential customers, and the amounts bid to perform services for those customers.

8. At least one customer advised West Shore that she had not solicited ECSB, and that she did not engage in any online activity (such as visiting the websites that connect homeowners with local businesses), that would have provided her information to ECSB. Nonetheless, ECSB had the customer's information.

9. Around the same time, a former West Shore employee who went to work for ECSB, Jacob Peffley ("Mr. Peffley"), came forward with troubling information about the activities of the Defendants.

10. More specifically, Mr. Peffley informed West Shore that while working for ECSB, he witnessed a then-current West Shore employee delivering West Shore installation products and materials to an installation job being completed for ECSB.

11.     Mr. Peffley further advised West Shore of information that led West Shore to believe that Defendants were accessing Salesforce, the CRM platform used by West Shore.

12.     Following Mr. Peffley's report, West Shore immediately took steps to bar Wenz's access to Salesforce and began an investigation. As part of the investigation, West Shore's Chief Technology Officer, Daniel Fisher ("Mr. Fisher"), was able to identify the Internet Protocol address ("IP address") utilized by Wenz when accessing West Shore's network remotely during the term of his employment with West Shore. Mr. Fisher then searched West Shore's access records for the IP address associated with Wenz for the period after his separation from employment on September 4, 2020. From that search, Mr. Fisher determined that the IP address associated with Wenz was in fact being utilized to access West Shore's Salesforce system on a regular basis during the period approximately two hours after his separation of employment with West Shore and through March 3, 2021.

13.     Defendants are now directly competing with West Shore in the highly competitive home remodeling industry with knowledge of West Shore's Confidential Information and Trade Secrets obtained through their unauthorized access of West Shore's CRM platform Salesforce.

14.     Furthermore, given Defendants' actions to date, it is possible that they will continue to improperly access, disclose, use, or otherwise exploit West Shore's Confidential Information and Trade Secrets for the benefit of ECSB.

15.     The Wenzs remain employed by ECSB and ECSB is still performing home remodeling projects.

16.     If Defendants remain in possession of West Shore's Confidential Information and Trade Secrets, they may be able to use this information for their individual and collective benefit.

4

Based on the allegations outlined above and the Verified Complaint [DE-1] and supporting documents, incorporated herein by reference, the court makes the following findings that support the issuance of this Preliminary Injunction:

17. West Shore is likely to succeed on the merits of its Computer Fraud and Abuse Act claim because Defendants have accessed West Shore's information housed in Salesforce, without authorization, including the contact information for existing and potential customers, the specifications for proposals given to existing and potential customers, the amounts bid to perform services for those customers, and West Shore's anticipated costs for the projects.

18. West Shore is likely to succeed on the merits of its Defend Trade Secrets Act and North Carolina Trade Secrets Protection Act claims because Defendants have misappropriated West Shore's "Trade Secrets" in violation of those statutes.

19. West Shore is likely to succeed on the merits of its Conversion claim against Defendants because they unlawfully accessed West Shore's Confidential Information and Trade Secrets and unlawfully obtained West Shore's physical property and materials and are using such items for a purpose other than in West Shore's interest.

20. West Shore is likely to succeed on the merits of its Tortious Interference with Prospective Economic Relations claim against Defendants because Defendants improperly accessed West Shore's Confidential Information and Trade Secrets and then used that information to compete with West Shore in an attempt to divert business to ECSB.

21. West Shore is likely to succeed on the merits of its North Carolina Unfair and Deceptive Trade Practices Act claim against Defendants because they unlawfully acquired West Shore's Confidential Information and Trade Secrets and are using such information to gain a competitive advantage.

22. West Shore is likely to succeed on the merits of its claim for Conspiracy against the Wenzs because Wenz engaged in unlawful activity and Mrs. Wenz knew of the same and helped facilitate or encourage Wenz's conduct.

23. West Shore will suffer immediate and irreparable harm if Defendants' misappropriation and use of West Shore's Confidential Information and Trade Secrets are not immediately enjoined.

24. West Shore is likely to continue to suffer irreparable harm because West Shore has presented evidence that its former employee acted to unlawfully take *and use* its confidential, proprietary, and trade secret information with participation by his wife and co-worker, Mrs. Wenz, for the use and benefit of ECSB.

25. Enjoining Defendants' from prospective unlawful conduct will not cause harm to Defendants. Defendants will merely be placed in the position of a lawful *status quo*.

26. Granting an injunction is consistent with the public interest of fair competition, protecting contractual relationships, and preserving parties' trade secrets.

## II. The Specific Terms of and Acts Being Restrained by this Preliminary Injunction

For the purposes of this Preliminary Injunction, West Shore's Confidential Information and Trade Secrets is as defined in paragraph 2 above. The specific terms of and the acts being restrained by this Preliminary Injunction are as follows:

27. Defendants shall <u>immediately</u> cease any access to West Shore's Salesforce CRM.

28. Defendants shall be prohibited from using any information received to date from West Shore's Salesforce CRM.

29. On or before March 25, 2021, Defendants shall return and deliver to West Shore any of West Shore's Confidential Information and Trade Secrets within Defendants' current

6

Case 5:21-cv-00107-M   Document 21   Filed 03/11/21   Page 6 of 8

possession in any format, e.g., paper or electronic, and any other property belonging to West Shore taken without permission.

30. Defendants shall <u>immediately</u> return and deliver to West Shore any physical products or materials illegally received from Donte Watkins or any other employee of West Shore and any other tangible property belonging to West Shore taken without permission. Products for which Defendants paid fair-market value are exempted from this Preliminary Injunction.

31. Defendants are prohibited from use of West Shore's Confidential Information and Trade Secrets in furtherance of ECSB's business or in any other manner. However, this Preliminary Injunction does not preclude ECSB from engaging in business obtained through independent leads. Nor is it designed to preclude Defendants use of common knowledge in the industry, specifically a cost-plus pricing strategy, or knowledge or skills acquired independent of West Shore.

32. Until further order, Defendants are hereby enjoined from misappropriating, using, or disclosing to any person or entity West Shore's Confidential Information and Trade Secrets other than for purposes of this litigation.

33. Pursuant to Federal Rule of Civil Procedure 65(c), the court has considered the issue of security. Neither party sought to be heard on the issue and the court in its discretion will waive the requirement at this stage, finding that the gravity of the potential harm to the Defendants of enjoining illegal behavior is negligible.

34. This Preliminary Injunction shall continue in effect until further order of the court. The court will entertain motions to amend the terms of this Preliminary Injunction.

Furthermore, the parties are DIRECTED to meet and confer regarding ECSB's ongoing contracts that may fall within the scope of this Preliminary Injunction to ensure adequate compliance herewith.

SO ORDERED this the 11th day of March, 2021.

*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE